IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SAMNANG SUY,

      Petitioner,                       No. CIV S-02-2765 RRB EFB P

  vs.

CHERYL K. PLILER, Warden,

      Respondent.                  FINDINGS AND RECOMMENDATIONS

_____/

      Petitioner is a state prisoner proceeding *in propria persona* with an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges a judgment of conviction entered against him on March 10, 2003 on three counts of assault with a semiautomatic firearm and one count of discharging a firearm at an occupied motor vehicle, with street gang and weapon enhancements. He seeks relief on the grounds that: (1) the trial court violated his right to due process when it improperly responded to a jury question about the meaning of "reasonable doubt;" (2) the prosecutor committed misconduct when he attempted to define the term "reasonable doubt;" and (3) the prosecutor committed misconduct when he commented during his closing argument on petitioner's failure to testify. Upon careful consideration of the record and the applicable law, and for the reasons set forth below, the undersigned recommends that petitioner's application for habeas corpus relief be denied.

1

**I. Procedural Background**

On January 28, 2000, an amended information was filed in the San Joaquin County Superior Court charging petitioner and co-defendant Leach Chhouen with two counts of attempted murder, three counts of assault with a semiautomatic firearm, and one count of shooting at an occupied motor vehicle. Clerk's Transcript on Appeal (CT) at 497-508. It was further alleged that some of the offenses were committed by petitioner with the intent to promote a criminal street gang, that petitioner committed the offenses while released on his own recognizance, and that petitioner used a firearm in the commission of the offenses. *Id.* After a jury trial, petitioner was found not guilty on the charge of attempted murder but guilty of shooting at an occupied vehicle and three counts of assault with a firearm. *Id.* at 802-14. The jury also found true the street gang and firearm use enhancements. *Id.* On March 20, 2000, the trial court found that petitioner committed the offenses while he was released on his own recognizance. *Id.* at 874. On June 26, 2000, petitioner was sentenced to a total prison term of twenty-one years. *Id.* at 2054-55.

**II. Factual Background**[1]

> The victims were three of the four occupants of a car: the driver, the driver's teenage stepson, and the stepson's fellow gang member. The latter two were sitting in the back seat, the stepson on the passenger side. As they were driving, a white car approached on the driver's side. Defendant Suy was in the front passenger seat, defendant Chhoeun behind him. The defendants were members of a gang that was a rival of the gang to which the stepson and his cohort belonged. All three victims were familiar with both defendants and denied having any previous conflicts or arguments with them, though the stepson's cohort was aware "many" members of defendant Chhoeun's gang accused him of killing defendant Chhoeun's brother in a drive-by gang shooting (a rumor he denied).
>
> The defendants both made gang gestures at the victims' car (defendant Chhoeun leaning out of his window), and either

---

[1] The following summary is drawn from the April 8, 2002 opinion of the California Court of Appeal for the Third Appellate District (hereinafter Opinion) at 3-4, filed on May 13, 2003 as Exhibit D to respondent's answer.

shouted the name of their gang or "what's up, cuz" (which is considered an insult when directed at rivals). There were no threats of violence. None of the victims responded to this goading.

The stepson's cohort ducked at the sound of gunfire. He denied seeing anyone with a gun. The driver saw defendant Suy reach under his seat, at which point he stared straight ahead and accelerated the car. He heard a shot, but never saw either defendant holding a gun.

The stepson's cohort called the stepson's attention to the presence of the car with the rival gang members. The stepson initially turned away when the defendants began their taunting. When he looked back, he saw defendant Suy reach under his seat (corroborating his stepfather's account). He then, however, saw defendant Suy point a gun in the direction of the driver's door and fire it. The stepson did not describe what defendant Chhoeun was doing at the time.

The other car drove off, making a left turn. Afterward, the victims found a bullet hole in the driver's door.

Acceding to the wishes of their companions, the driver and his stepson initially did not report the presence of the other occupants to the police; eventually, the stepson's cohort told his probation officer about the shooting, who put him in touch with the police. The fourth occupant of the car, a friend of the driver, evaded contact with the police after the incident either because he was on probation or because he lived near the defendants and feared retaliation for reporting them. The visibly shaken driver and his stepson identified the defendants as their attackers when the police came to their residence. The driver and the stepson's cohort also picked out the defendants' pictures in photo arrays.

## III. Analysis

### A. Standards for a Writ of Habeas Corpus

Federal habeas corpus relief is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

>(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

>(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

3

Under section 2254(d)(1), a state court decision is "contrary to" clearly established United States Supreme Court precedents "if it 'applies a rule that contradicts the governing law set forth in [Supreme Court] cases', or if it 'confronts a set of facts that are materially indistinguishable from a decision'" of the Supreme Court and nevertheless arrives at a different result. *Early v. Packer*, 537 U.S. 3, 8 (2002) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-406 (2000)).

Under the "unreasonable application" clause of section 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case. *Williams*, 529 U.S. at 413. A federal habeas court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 412; *see also Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) (it is "not enough that a federal habeas court, in its independent review of the legal question, is left with a 'firm conviction' that the state court was 'erroneous.'")

The court looks to the last reasoned state court decision as the basis for the state court judgment. *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002). Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under section 2254(d). *Delgado v. Lewis*, 223 F.3d 976, 982 (9th Cir. 2000).

**B. Petitioner's Claims**

  **1. Prosecutorial Misconduct in Closing Argument**

    **a. Comments about Reasonable Doubt**

Petitioner claims that he was denied his constitutional rights to trial by jury and due process of law because of statements made by the prosecutor during his closing argument regarding the definition of reasonable doubt. The California Court of Appeal fairly explained

4

the background to this claim as follows:

> In responding to a brief remark during defense argument, the prosecutor contended, "[Defense counsel] said that – or implied at least that you were the most important person[s] in his client's life, and I don't really think that's a fair analogy to make. [¶] I think that you're more like teachers. I don't know if any of you have ever been a teacher, in the position of a teacher. When you're a teacher you give grades, and you give scores based on what students earn and that's all you're doing. [¶] You don't have a personal responsibility to these defendants. There's no tinge on your conscience. They're guilty and they're going to be convicted and punished because of what they did and not what you did, so don't . . . feel like you've got some sort of personal responsibility for this. You're simply teachers giving a grade." Defense counsel objected, stating, "I think that he's arguing that they're trying to decide this issue by less than a reasonable doubt." The court responded, "I don't think he's saying that. Obviously, beyond a reasonable doubt is required here."

Shortly afterward, the prosecutor argued,

> "The last thing I want to talk to you about is beyond a reasonable doubt. What does that mean? Well, you've heard what a preponderance of the evidence is. That's another standard they use in civil. It's basically 51 percent. Do you have a 51 percent certainty that this thing happened, this car accident or whatever the civil issue is. [¶] Obviously beyond all doubt would be 100 percent, and that you cannot prove. The judge will tell you that there's no way to get 100 percent certainty in anything relating to human affairs. It's just simply not that exact, so it's somewhere in between those two. [¶] It's the same standard they use downstairs in the basement in traffic court when that officer comes in and says . . . I clocked this guy at 85 or whatever and the judge says, fine, pay your fine. It's the same standard they use down there. They use it all over this courthouse and all over this country, and juries certainly convict people of that. [¶] The judge is going to read the instruction to you. It's written in the negative. It's going to say you have a reasonable doubt if you don't have an abiding conviction of the truth of the charges. [¶] So I think it's easier, at least in my mind, to turn it around and say if you have an abiding conviction of the truth of the charges, then you don't have a reasonable doubt. [¶] And it's really simple. Abiding means lasting. Conviction means belief. Do you have a lasting belief in the truth of the charges, and that's all that you're being asked. [¶] I think that that belief in the truth of those charges should last as long as the facts of this case are fresh in your mind. Whether that's a month and you want to put us all out of your memory, or whether that's five years, as long as those facts are fresh and you can tell . . . people about the evidence in this case, that's- -"

5

> At this point, the defense objected that the prosecutor was not properly describing the standard. The court stated, "Well, I'll instruct on reasonable doubt. I've read it and I'll read it again. I don't think he said anything that's inconsistent so far."

Opinion at 17-19.

Petitioner objects to the prosecutor's statements that reasonable doubt "lies between 51 and 100 percent certainty" and that abiding conviction means belief in the truth of the charges "as long as the facts of the case are fresh in your mind." Pet. at 5-4, 5-5. He argues that this language trivialized the prosecutor's burden of proof and improperly compared it to the much lower standard of preponderance of the evidence. *Id.* at 5-5. Petitioner also argues that the prosecutor's comments linking the jury's role to a teacher "handing out grades" or to a traffic court judge imposing a traffic fine was "reductive of the applicable standard" and reduced the prosecutor's burden to "the lowest common denominator." *Id.*

The California Court of Appeal denied petitioner's claims in this regard, explaining its reasoning as follows:

> We find nothing objectionable about arguing that an abiding conviction should last as long as one's recollection of the facts of the case. We do, however, agree that while a prosecutor may argue against any fixed percentage of certainty in determining reasonable doubt, it would misstate the threshold to suggest something only slightly more than preponderance. However, as the Supreme Court held in *People v. Nguyen,* we believe any misconduct was harmless because both the prosecutor and the trial court directed the jury's attention to the instruction itself[2] the language of which sufficiently suggests an elevated standard. Moreover, in light of the acquittals, the jury must have accorded the benefit of the doubt to defendant Suy. We thus reject this contention.

Opinion at 19-20.

A criminal defendant's due process rights are violated when a prosecutor's misconduct renders a trial fundamentally unfair. *Darden v. Wainwright*, 477 U.S. 168, 181 (1986).

---

[2] *Cf. People v. Nguyen* (1995) 40 Cal.App.4th 28, 36 (*Nguyen*) (misconduct to equate reasonable doubt with decisions to change traffic lanes or to marry).

6

However, such misconduct does not, per se, violate a petitioner's constitutional rights. *Jeffries v. Blodgett,* 5 F.3d 1180, 1191 (9th Cir. 1993) (citing *Darden*, 477 U.S. at 181, and *Campbell v. Kincheloe*, 829 F.2d 1453, 1457 (9th Cir. 1987)).  Claims of prosecutorial misconduct are reviewed "'on the merits, examining the entire proceedings to determine whether the prosecutor's [actions] so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Johnson v. Sublett*, 63 F.3d 926, 929 (9th Cir. 1995) (citation omitted).  *See also Greer v. Miller*, 483 U.S. 756, 765 (1987); *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974); *Turner v Calderon*, 281 F.3d 851, 868 (9th Cir. 2002).  Relief on such claims is limited to cases in which the petitioner can establish that prosecutorial misconduct resulted in actual prejudice. *Johnson*, 63 F.3d at 930 (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993)); *see also Darden*, 477 U.S. at 181-83; *Turner*, 281 F.3d at 868.  Put another way, prosecutorial misconduct violates due process when it has a substantial and injurious effect or influence in determining the jury's verdict.  *See Ortiz-Sandoval v. Gomez*, 81 F.3d 891, 899 (9th Cir. 1996). Finally, it is the petitioner's burden to state facts that point to a real possibility of constitutional error in this regard.  *See O'Bremski v. Maass*, 915 F.2d 418, 420 (9th Cir. 1990).

In considering claims of prosecutorial misconduct involving allegations of improper argument, the court is to examine the likely effect of the statements in the context in which they were made and determine whether the comments so infected the trial with unfairness as to render the resulting conviction a denial of due process.  *Turner*, 281 F.3d at 868; *Sandoval v. Calderon*, 241 F.3d 765, 778 (9th Cir. 2001); *see also Donnelly*, 416 U.S. at 643; *Darden*, 477 U.S. at 181-83.  Thus, in order to determine whether a prosecutor engaged in misconduct in closing argument, it is necessary to examine the entire proceedings to place the remarks in context.  *See United States v. Robinson*, 485 U.S. 25, 33 (1988) ("[P]rosecutorial comment must be examined in context. . . ."); *Greer*, 483 U.S. at 765-66; *Williams v. Borg*, 139 F.3d 737, 745 (9th Cir. 1998).

////

7

After a review of the record, this court concludes that the prosecutor's comments about reasonable doubt did not violate petitioner's rights to due process or a jury trial. The prosecutor informed the jury that in civil cases the burden of proof was a preponderance of the evidence, or "basically 51 percent." He then went on to state that the concept of reasonable doubt fell "somewhere in between" the preponderance standard and "100 percent certainty." The jury was not informed that reasonable doubt equated to a 51% certainty or that it was even close to that percentage. Rather, the prosecutor stated that the *preponderance standard* was equal to a 51% certainty and that reasonable doubt was a higher standard. In essence, the prosecutor simply informed the jury that "reasonable doubt" fell somewhere between the standards of preponderance and certainty. These remarks, if left standing alone, may be incomplete but they were not incorrect. However, they were not left standing alone. As the state appellate court explained, both the prosecutor and the trial judge referred the jury to the language of the actual instruction. That instruction was read to the jury and the jury was admonished to apply the instructions as given by the court. There was nothing in the prosecutor's statement isolated by the defendant that prejudicially undermined the instruction on reasonable doubt.

It is true that the prosecutor's reference to everyday decisions, such as what grade to give a school assignment or whether a motorist is guilty of a traffic violation if he exceeds the speed limit, come close to improperly trivializing the reasonable doubt standard. However, immediately after making these remarks, the prosecutor referred the jury to CALJIC No. 2.90, the jury instruction defining reasonable doubt, and spent some time explaining what the language of that instruction meant.[3] His explanation was not erroneous or prejudicial; indeed, petitioner

---

[3] CALJIC No. 2.90, as read to petitioner's jury, stated:

> A defendant in a criminal action is presumed to be innocent until the contrary is proved, and in case of a reasonable doubt whether [his] guilt is satisfactorily shown, [he] is entitled to a verdict of not guilty. This presumption places upon the People the burden of proving [him] guilty beyond a reasonable doubt.

8

does not challenge this portion of the closing argument. Viewed in its entirety, the prosecutor's closing statement did not significantly detract from or nullify the jury instruction on reasonable doubt.

Neither party disputes that CALJIC No. 2.90 properly defined the beyond a reasonable doubt standard. "The jury is regularly presumed to accept the law as stated by the court, not as stated by counsel." *United States v. Rodrigues*, 159 F.3d 439, 451 (9th Cir.1998). In addition, "misstatements of the law by prosecutors in closing "are not to be judged as having the same force as an instruction from the court." *Boyde v. California*, 494 U.S. 370, 384-85 (1990). Under the circumstances presented here, the state appellate court's conclusion that the prosecutor did not commit misconduct during closing argument is not contrary to or an unreasonable application of federal law. Accordingly, petitioner is not entitled to relief on this claim.

### b. **Griffin Error**

Petitioner's next claim of prosecutorial misconduct is that his rights to due process and a fair trial were violated when the prosecutor commented during closing argument on petitioner's failure to testify, in violation of *Griffin v. California*, 380 U.S. 609 (1965). The last reasoned rejection of this claim is the decision of the California Court of Appeal on petitioner's direct appeal. That court fairly described the relevant background as follows:

> In explaining to the jury why he made verdicts available both for attempted murder and assault with a firearm, the prosecutor explained, "For attempted murder I have to show specific intent to kill. You have to get into the head of Samnang Suy and decide what he intended. We don't have direct evidence of that because

---

Reasonable doubt is defined as follows: It is not a mere possible doubt; because everything relating to human affairs is open to some possible or imaginary doubt. It is that state of the case which, after the entire comparison and consideration of all the evidence, leaves the minds of the jurors in that condition that they cannot say they feel an abiding conviction of the truth of the charge.

CT at 747. This jury instruction passes constitutional muster. *See Victor v. Nebraska*, 511 U.S. 1, 22 (1994); *Lisenbee v. Henry*, 166 F.3d 997, 998-1000 (9th Cir. 1999).

9

> he has not told us what he intended, and he's perfectly entitled to sit there and not tell us. That is his right. You cannot hold that against him, but it means that you have to find circumstantially– ," at which point defense counsel objected. After a bench conference, the court instructed the jury, "the defendants have the absolute constitutional right not to testify. That will be given to you again in instruction. And it is a subject the jury is not to take into consideration, and it is not appropriate for counsel to argue that. I'll instruct the jury to disregard that."
>
> Later, the prosecutor responded to a defense argument about "why I didn't want his client['s] . . . statement to come before you. That's right. I didn't want it to come before you and there's a good reason for that. Everybody else that came in and gave testimony . . . took an oath and sat on that witness stand and . . ." (at which point the court sustained defense counsel's objection). The prosecutor continued, "Well, the reason that I didn't want his statement out there is he's not under oath, and he's not subject to cross-examination." The court sustained a second defense objection. The prosecutor began yet again: "And I don't get to challenge his statement. But now –"; in once again sustaining an objection, the court told the prosecutor, "stay away from that area. I've read cases exactly on point like that. There were reversals." The prosecutor then confined himself to disputing the substance of the out-of-court statement.

Opinion at 12-13.[4] The state court record also reflects that the prosecutor made the following statements:

> Again, Mr. Schultz (counsel for co-defendant Chhouen) had several hours to cross-examine Vanna Suon. He's an experienced attorney. Vanna is not educated. He's not experienced. Did he ever show you one lie that Vanna made under oath at a preliminary hearing or trial? He did not. That's because Vanna never once lied under oath.
>
> He says that their lies have equal value. A lie to a police officer is the same as a lie in court. I already touched upon that before. It's vastly different to lie to an officer out in the field than to come in here through those doors, take that oath, sit in that chair, have that judge staring at you, have that court reporter taking down every

---

[4] The state court record reflects that Vanna Suon, Souen Thlang, and Rathana Chan, three occupants of the victims' car, testified for the prosecution at petitioner's trial. Neither petitioner nor co-defendant Chhouen testified at trial, although Chhouen gave a statement to police prior to trial. *See* RT at 777-82; 798-805. The prosecutor's statements described in the second paragraph, above, were meant to compare Chhouen's pre-trial statements, which were not under oath, to the statements made by prosecution witnesses Suon, Thlang, and Chan at petitioner's trial.

10

> "uh" and every "um" that you make, and it's certainly every word that you say. It's a vastly different experience.
>
> And oftentimes people come in and they are more impressed by the seriousness of the court and they just will not lie under oath, and I would submit to you that Vanna Suon is that kind of person.

RT at 1653-54.[5]

Petitioner argues that the prosecutor's statements, described above, improperly commented on the fact that neither he nor his co-defendant testified at trial. He argues, "the prosecution's reference to petitioner's failure to testify, particularly when coupled with repeated comparisons of coappellant (Chhouen) with prosecution witnesses who testified under oath at trial, transformed the petitioner's failure to take the stand into a pejorative reflection on their credibility, precisely in contravention of constitutional error very likely had an impact on the deliberations, during which the jury ask for an explanation of reasonable doubt, deliberated further, then ultimately failed to convict petitioner and codefendant Chhouen of the most serious charges of attempted murder." Pet. at 5-9.

The California Court of Appeal denied petitioner's claim in this regard, reasoning as follows:

> . . . defendant Suy contends this was impermissible comment upon his right not to testify.[6] He believes this had a heightened effect in light of the prosecutor's efforts to minimize the lies that the victims had told to the police (where he had argued it was much easier to lie out of court than under oath).
>
> We conclude the trial court's rulings and admonitions ameliorated any harm from the prosecutor's comments. In the first instance, the court promptly admonished the jury to pay heed to the instruction precluding any adverse inference from exercising the right not to testify, which we ordinarily presume cured any

---

[5] The record reflects that Vanna Suon initially lied to the police when he was questioned, failing to disclose that Rathana Chan and another person, Sarim, were passengers in his car. RT at 377-79, 448-49, 663-64. He did this because Chan and Sarim were on probation at the time and because they asked him not to tell the police they were in the vehicle. *Id.*

[6] *Griffin v. California* (1965) 380 U.S. 609 [14 L.Ed.2d 106].

11

> misconduct.[7]  As for the second instance, the court repeatedly sustained the objections of the defense and instructed the prosecutor in front of the jury to drop the subject. "This was a telling indication to the jury that the argument was improper and to be disregarded." (citation omitted.)

Opinion at 13-14.

The Fifth Amendment prohibits a prosecutor from commenting to the jury regarding the defendant's failure to testify at trial. *Griffin*, 380 U.S. at 615. A prosecutorial comment in argument runs afoul of the rule "if it is manifestly intended to call attention to the defendant's failure to testify, or is of such a character that the jury would naturally and necessarily take it to be a comment on the failure to testify." *Lincoln v. Sunn*, 807 F.2d 805, 809 (9th Cir. 1987). However, relief is to be granted on such a claim only "'where such comment is extensive, where an inference of guilt from silence is stressed to the jury as a basis for the conviction, and where there is evidence that could have supported acquittal.'" *Id.* (citations omitted). *See also Beardslee v. Woodford*, 358 F.3d 560, 587 (9th Cir. 2004); *United States v. Olano*, 62 F.3d 1180, 1196 (9th Cir. 1995); *Jeffries v. Blodgett*, 5 F.3d 1180, 1192 (1993). Conversely, relief will not be granted where the prosecutorial comment is a single, isolated incident, does not stress the inference of guilt from silence as a basis for the verdict and is followed by a curative instruction. *Lincoln*, 807 F.2d at 809.

This court agrees with the state appellate court that no error of constitutional magnitude occurred here. The court first notes that petitioner's jury received the following instructions:

> A defendant in a criminal trial has a constitutional right not to be compelled to testify. You must not draw any inference from the fact that a defendant does not testify. Further, you must neither discuss this matter nor permit it to enter into your deliberations in any way.
>
> In deciding whether or not to testify, the defendant may choose to rely on the state of the evidence and upon the failure, if any, of the People to prove beyond a reasonable doubt every essential element

---

[7] *Bruton v. United States* (1968) 391 U.S. 123, 135 [20 L.Ed.2d 476]; *see Richardson v. Marsh* (1987) 481 U.S. 200, 211 [95 L.Ed.2d 176].

12

> of the charge against him. No lack of testimony on defendant's
> part will make up for a failure of proof by the People so as to
> support a finding against him on any such essential element.

CT at 654-55. These instructions clearly informed the jurors that they could not treat petitioner's silence as substantive evidence of guilt, that they were not to draw any negative inference from petitioner's failure to testify, and that they could not penalize petitioner for failing to fill in material gaps in the evidence. Further, as explained by the California Court of Appeal, the trial court effectively precluded the prosecutor from making any significant comment on the failure of petitioner and his co-defendant to testify at trial. In every instance where the prosecutor's comments intruded on petitioner's right to remain silent, the trial court sustained a defense objection and/or repeated the jury instruction cited above. In addition, the prosecutor's comments did not ask the jury to draw an adverse inference based on petitioner's election not to testify and petitioner has not cited any evidence that would have supported an acquittal on the charges for which he was convicted. Given these circumstances, petitioner has failed to show prejudicial error by virtue of the prosecutor's comments. Accordingly, petitioner is not entitled to relief on this claim. *Beardslee*, 358 F.3d at 587.

### 2. Jury Instruction Error

Petitioner argues that the trial judge violated his constitutional rights to trial by jury and due process of law when he replied to a jury request for a definition of reasonable doubt.[8] The last reasoned rejection of this claim is the decision of the California Court of Appeal. That court fairly described the background to petitioner's claim in this regard as follows:

> The court first reread the pattern definition. It then stated, "There
> are a few other things I can say about it. Not much, because this is
> the definition that we have. Percentage, I think I might have told
> you there is no percentage. It's more than 50 percent, it's less than

---

[8] The state court record reflects that petitioner's jury asked the following question: "Please define reasonable doubt." CT at 799. When the jury was brought back into the courtroom, one of the jurors informed the judge that "[w]e wanted layman's terms." RT at 1730. The judge responded, "You didn't say in layman's terms. You just said, define reasonable doubt." *Id.* He then proceeded to respond to the jury's question, as described above.

13

> 100 percent. Where it is in between, the law does not affix a specific percentage. That's all I can say. I wish I could say something else. [¶] In a civil case, it's preponderance of the evidence. I gave you the definition of preponderance because one of the issues in this case **only** requires preponderance, . . . and that is did the defendant Choeun commit any of those other prior acts, which were received for the limited purpose of knowledge, intent that I had explained. [¶] But to find either defendant guilty of any of the charges or any of the enhancements, it has to be beyond a reasonable doubt. And unfortunately there is nothing else I can tell you about it. That is the definition. [¶] You might want to read it a few more times. But there's nothing else I can tell you about it." (Emphasis added.)

Opinion at 23.

Petitioner claims the judge's remarks "severely diluted the standard of proof the prosecution was required to meet to prove petitioner guilty." Pet. at 5-3. He argues, "proof beyond a reasonable doubt requires the jurors to have 'utmost certainty' in the petitioner's guilt and reference to reasonable doubt as existing between 51 and 100%, coupled with confusing mention of preponderance of evidence, fails utterly to ensure that the jury understands that proof beyond a reasonable doubt requires a greater degree of certainty even than clear and convincing evidence, let alone greater than the 51% that preponderance represents." *Id.* at 5-4.

The California Court of Appeal rejected this claim on the ground that the trial court's instruction to the jury was not misleading or erroneous. The court explained:

> . . . we reiterate that it is misleading to suggest reasonable doubt might only be slightly more than preponderance. However, the trial court *did* distinguish the two (contrary to the claim of Suy), noting evidence of other crimes required 'only' preponderance (which served to minimize that standard of proof). And the court never said it was slightly more.

Opinion at 24. The appellate court also found that any error in the instruction was harmless, citing, in this regard, its discussion in connection with petitioner's first claim of prosecutorial misconduct, set forth above. *Id.*

In general, federal habeas corpus relief is not available for jury instruction error unless the error so infects the entire trial that the resulting conviction violates due process, rendering the trial fundamentally unfair. *Estelle v. McGuire*, 502 U.S. 62, 71-72 (1991); *Duckett v. Godinez*,

14

67 F.3d 734, 745-46 (9th Cir. 1995).  A federal court must evaluate jury instructions "'in the context of the overall charge to the jury as a component of the entire trial process.'" *Prantil v. California*, 843 F.2d 314, 317 (9th Cir. 1988) (per curiam) (quoting *Bashor v. Risley*, 730 F.2d 1228, 1239 (9th Cir. 1984)).  It is well established that the burden is on the prosecution to prove each and every element of the crime charged beyond a reasonable doubt.  *In re Winship*, 397 U.S. 358, 364 (1970).  "The Constitution does not require that any particular form of words be used in advising the jury of the government's burden of proof.  Rather, 'taken as a whole, the instruction [must] correctly conve[y] the concept of reasonable doubt to the jury.'" *Victor*, 511 U.S. at 5 (quoting *Holland v. United States*, 348 U.S. 121, 140 (1954) (internal citation omitted)).  In evaluating the constitutionality of the jury charge, a reviewing court must determine "whether there is s reasonable likelihood that the jury understood the instructions to allow conviction based on proof insufficient to meet" the requirements of due process.  *Victor*, 511 U.S. at 6.

> Analysis must focus initially on the specific language challenged, but the inquiry does not end there. If a specific portion of the jury charge, considered in isolation, could reasonably have been understood as creating a presumption that relieves the State of its burden of persuasion on an element of an offense, the potentially offending words must be considered in the context of the charge as a whole. Other instructions might explain the particular infirm language to the extent that a reasonable juror could not have considered the charge to have created an unconstitutional presumption. This analysis "requires careful attention to the words actually spoken to the jury ... , for whether a defendant has been accorded his constitutional rights depends upon the way in which a reasonable juror could have interpreted the instruction."

*Francis v. Franklin,* 471 U.S. 307, 315 (1985) (internal citations omitted).

It is not disputed that CALJIC No. 2.90, which was given to the jury at petitioner's trial, was a constitutionally acceptable explanation of the concept of reasonable doubt.  The question presented here is whether the trial judge's remarks had the effect of altering the language of that instruction to suggest a lower burden of proof than was constitutionally required.

////

The question asked by the jury indicates that they were having trouble understanding the practical application of the term "reasonable doubt." The judge's response made it clear that while the concept was somewhat vague, the jury was required to rely on the language of CALJIC No. 2.90 to determine the correct definition. The judge's remarks did not supplant or call into question CALJIC No. 2.90; on the contrary, he repeatedly told the jury to rely on it. The jury is presumed to have followed this instruction. *Francis*, 471 U.S. at 324, n. 9. Further, the judge specifically warned the jury against using a percentage formula to define the reasonable doubt standard, stating that "there is no percentage" and "the law does not affix a specific percentage." Opinion at 23. He also distinguished the concept of reasonable doubt from the concept of "preponderance of the evidence" used in a civil case, making clear that reasonable doubt was a higher standard. On the whole, the judge's remarks were not incorrect or misleading and they did not have the effect of nullifying the language of CALJIC No. 2.90 to suggest a lower standard. The state court decision rejecting petitioner's claim in this regard is not contrary to or an unreasonable application of United States Supreme Court precedent and should not be set aside. Accordingly, petitioner is not entitled to relief on this claim.

For the foregoing reason, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Failure to file objections

////

////

////

////

1  within the specified time may waive the right to appeal the District Court's order. *Turner v.*
2  *Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).
3  DATED: November 20, 2007.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE